FILED
2011 Nov-09  PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **HEATHER A. MEADOWS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:11-CV-01361-RDP** |
| | } | |
| **SOCIAL SECURITY** | } | |
| **ADMINISTRATION, COMMISSIONER** | } | |
| **MICHAEL J. ASTRUE,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Heather Meadows brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for child's insurance benefits. *See* 42 U.S.C. § 405(g). Based upon a review of the record, the court finds that the decision of the Commissioner is due to be affirmed.

## I.      Proceedings Below

This action arises from Plaintiff's application for child's insurance benefits filed in May 2007[1] on the account of her father[2] under Title II of the Social Security Act, 42 U.S.C. § 402(d),

---

[1] Plaintiff initially applied for disability insurance benefits and Supplemental Security Income ("SSI") in 2006. The disability claim was disallowed due to a lack of insured status, but the SSI claim was allowed with an onset date of May 2006. In February 2007, it was discovered that Plaintiff had earned additional income, thereby making her ineligible to receive SSI benefits. In May 2007, an application for child's insurance benefits was secured on the account of Plaintiff's father with a protective filing date of May 2006, the date of Plaintiff's SSI application. (Tr. 39). It is that child's insurance benefit claim is the claim before the court. Although the ALJ and the Appeals Council indicated that Plaintiff filed an application for child's insurance benefits on May 11, 2006 (Tr. 9, 17), the application was actually secured in May 2007 with a protective filing date of May 2006. The claim was thereafter forwarded to the State Agency.

[2] An individual may apply for Social Security disability benefits on the wage record of a parent, if the individual is 18 years old or older and has a disability that began before age 22. *See* 20 C.F.R. § 404.350(a)(5). Plaintiff turned age 22 in November 2002. (Tr. 257). In order to be eligible for child's insurance benefits, Plaintiff must establish

alleging disability beginning on March 29, 2007 due to a brain tumor.  (Tr. 39-40).  On February 10, 2008, the Social Security Administration ("SSA") denied Plaintiff's application for child's insurance benefits.  (Tr. 33).  Thereafter, Plaintiff timely filed a written request for a hearing before an Administrative Law Judge ("ALJ").  (Tr. 36).  Plaintiff's request was granted and a hearing was conducted on July 29, 2009 in Birmingham, Alabama.  (Tr. 26, 249-91).  Plaintiff appeared in person at the hearing, along with her attorney and a vocational expert ("VE").  (Tr. 251).

In the ALJ's decision dated November 23, 2009, the ALJ found that Plaintiff: (1) had attained the age of twenty-two on November 22, 2002, and at the time of the hearing was considered a younger individual; (2) had not engaged in substantial gainful activity at any time since her alleged onset date of disability of March 29, 2007, even though she had worked after that date as a cosmetologist and a phlebotomist, but never performed those jobs at the level of substantial gainful activity; (3) suffers from the severe impairments of abdominal symptoms, headaches, and nausea – however, her allegations of suffering disabling limitations were not credible; and therefore, (4) prior to the date of his decision and turning twenty-two years old, did not have an impairment or combination of impairments that meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).  (Tr. 23-24).  The ALJ determined that prior to the date of his decision and attaining the age of twenty-two, Plaintiff had the residual functional capacity to perform light work requiring only occasional bending, occasional push/pulling with the upper extremities, and no exposure to unrestricted heights.  (Tr. 24).  And, although Plaintiff's nonexertional limitations would not allow her to perform a full range of light work, there were jobs that existed in significant numbers in the national economy that she could have

---

disability prior to November 2002.

performed.  (Tr. 24).

On January 11, 2010, Plaintiff requested that the Appeals Council review the ALJ's decision. (Tr. 12).  Plaintiff's request for review was granted and on October 1, 2010, the Appeals Council notified Plaintiff that a decision adopting the ALJ's statements regarding the pertinent provisions of the Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, would be entered.  (Tr. 5, 236-39). However, the Appeals Council did not adopt the ALJ's findings or conclusions that Plaintiff was not disabled beginning April 19, 2006,[3] determining that such findings are not consistent with the determination of the Alabama State agency issued in May 2007 that Plaintiff became disabled as of April 19, 2006.  (Tr. 5, 240).  In sum, the Appeals Council determined that Plaintiff was not disabled at any time prior to November 2002, when she attained the age of twenty-two, thereby making her ineligible for benefits as a disabled adult child on the wage-earner's record. (Tr. 6-7, 237). The Appeals Council's decision is the final decision of the Commissioner, and therefore properly before this court for review.  42 U.S.C. § 405(g).

At the time of the hearing, Plaintiff was twenty-eight years old and possessed a high school education.  (Tr. 257, 266).  Plaintiff claims she suffered from chronic abdominal symptoms, back pain, joint pain, diarrhea, headaches, and nausea prior to her twenty-second birthday.  (Tr. 259, 272-74, 279-81).  Plaintiff testified that she had experienced nausea since she was thirteen or fourteen years old, while in middle school, and it progressively worsened once she entered high school.  (Tr. 269).  Plaintiff stated that her doctors insisted she was "a hypochondriac and [] was making things

---

[3]Plaintiff was referred to Johns Hopkins Hospital in April 2006 by Dr. Louis B. Nabors, III.  Plaintiff was examined, administered an MRI, a biopsy was performed, and she was diagnosed with a brain tumor.  (Tr. 6).

up." (Tr. 259-60). Plaintiff testified that her illnesses caused her to miss sixty days of school during her senior year of high school. (Tr. 269). Although Plaintiff participated in her school's band from seventh grade in 1992 until her senior year of high school in 1998, she frequently missed band competitions due to health reasons. (Tr. 272, 278-80).

After graduating from high school in 1998, Plaintiff worked as a cosmetologist (unlicensed) apprentice until approximately 2000 or 2001. (Tr. 266-67). As a cosmetologist apprentice, Plaintiff's responsibilities included performing hair and salon services, and maintaining a clean work space. (Tr. 267-68). Plaintiff gave birth to a son in 2002, and until late 2005, lived in her own home and was the primary care-giver for the child. (Tr. 264-65). In 2003, Plaintiff began attending Jefferson State Community College where she received training as a phlebotomist. (Tr. 266). In 2005, Plaintiff was working as a full time employee, responsible for taking patients' blood and preparing the blood for labeling and testing. (Tr. 261). During her first year working as a phlebotomist, Plaintiff testified she was constantly sick and experienced nausea, vomiting, and headaches. (Tr. 262).

Plaintiff's medical records show that in September 1994 she began treatment for chronic abdominal symptoms and excessive menstrual bleeding. (Tr. 93, 99, 109-10, 122-25, 129-33, 276). Plaintiff presented to Dr. Travelute complaining of intermittent right upper quadrant pain and diarrhea which responded to conservative treatment with Donnatal. (Tr. 129). Both an abdominal and pelvic ultrasound were performed and results were normal. (Tr. 103, 129). Plaintiff was not found to be anemic and her lab results were normal. (Tr. 129-33). Additional testing revealed no evidence of colitis or Crohn's disease. (Tr. 75, 273). Plaintiff was referred to Dr. Naumann on October 24, 1994 for further study of her abnormal bleeding. (Tr. 129).

Upon examination, Dr. Naumann found that Plaintiff did have heavy bleeding and believed that she had a problem with chronic anovulation. (Tr. 102). Dr. Naumann found Plaintiff's exam to be within normal limits and suggested that she try a low dose of oral contraceptive in hopes of regulating her menses. (Tr. 102). On December 7, 1994, Plaintiff was again seen by Dr. Neumann for very heavy bleeding since starting the oral contraceptive. (Tr. 125). Upon examination, Dr. Neumann found that Plaintiff did have a great deal of bleeding, but the bimanual exam revealed no masses. (Tr. 125). Plaintiff was given a new prescription and instructed to increase her tablet intake each day if the bleeding did not stop. (Tr. 125). Blood work was ordered to rule out Von Willebrand's disease and those lab results were normal except for an elevated bleeding time. (Tr. 125). Dr. Neuman suggested to Plaintiff that Von Willenbrand would not likely cause significant problems, although she would need to inform her doctors should she ever have surgery or become pregnant. (Tr. 125). On December 27, 1994, Dr. Travelute recommended referring Plaintiff once again for further study of her bleeding issue. (Tr. 124).

On January 26, 1995, upon referral, Dr. Windsor reported to Dr. Travelute that he had examined Plaintiff for excessive menstrual bleeding thought to be secondary to chronic anovulation. (Tr. 99). After a brief work-up, Dr. Windsor found Plaintiff to have a mildly prolonged bleeding time, but her blood coagulation and other blood studies were within normal range. (Tr. 99). Dr. Windsor forwarded Plaintiff's Von Willebrand cofactor and factor VIII pro-coagulant levels for study, all of which came back within the normal range. (Tr. 99). Although Plaintiff's test results came back within the normal range, Dr. Windsor noted that it was possible she could still have a mild Type 2 variant of Von Willebrand. To confirm a diagnosis of Von Willebrand, conduction of platelet aggregation studies was indicated. At the time, because Plaintiff was undergoing hormonal

5

manipulation for her heavy periods (which were under much better control), and her clinical history did not suggest an ongoing coagulation disorder, Dr. Windsor talked with Plaintiff's mother and recommended that although they "could certainly proceed with platelet aggregation studies, [] unless she develops further clinically significant bleeding, not related to anovulation, it is probably better to watch without intervention." (Tr. 99).  Dr. Windsor noted that Plaintiff's mother was "somewhat [hesitant] to put [Plaintiff] through any further testing" and since her main Von Willebrand levels were within the normal range, Dr. Windsor stated, "I suppose this is o.k." (Tr. 99).  In his opinion, he stated that "even if her [oral contraceptive pills] are the cause of her prolonged bleeding time, if they are effective in controlling her heavy periods then I see no reason to change them." (Tr. 99, 99A).

On March 24, 1997, Plaintiff was referred to Dr. Allen at Birmingham Radiological Group for an abdominal ultrasound to rule out cholecystitis. (Tr. 98).  Dr. Allen's impression of Plaintiff's abdominal ultrasound was noted as "negative." (Tr. 98).  A blood test was collected on April 3, 1997, and it showed that all immunoglobulins and complement were normal. (Tr. 97).

On May 7, 1997, Plaintiff was referred by Dr. Travelute to Dr. Cotton Shallcross for evaluation of her markedly increased symptoms. (Tr. 93).  Plaintiff was now complaining of chronic nausea, worse every morning associated with vomiting, a grabbing, squeezing type pain worse after eating, some diarrhea with mucous in it every day, mouth ulcers, joint pain, palpitations and presyncope, and had been told that she had "stool in her urine." (Tr. 93).  Dr. Travelute expressed concern about Plaintiff's symptoms, and believed it prudent to evaluate Plaintiff with a possible upper endoscopy and colonoscopy. (Tr. 93).  On May 13, 1997, Dr. Shallcross performed the recommended colonoscopy plus biopsy, as well as an esophagogastroduodenoscopy ("EGD"). (Tr.

6

76-77).  Dr. Shallcross noted the results of Plaintiff's colonoscopy plus biopsy as normal, showing

no evidence of colitis or Crohn's disease.  (Tr. 76, 92).  Results of her EGD were noted as normal,

but because he "could not get the scope into the duodenum as the patient was extremely combative,"

the procedure was terminated.  (Tr. 77).  Plaintiff was referred back to Dr. Travelute.  On May 30,

1997, Dr. Travelute referred Plaintiff to Dr. Brightbill who administered an abdominal CT scan with

contrast, results of which were noted as negative.  (Tr. 87).

Plaintiff was seen on June 19, 1997 at Birmingham Baptist Medical Center Montclair for an

injury to her left foot/ankle after falling for no reason as she walked to her car.  (Tr. 84).  No fracture

or dislocation was found.  (Tr. 85).  After this incident, the next medical record submitted by

Plaintiff is dated 2006.

On January 4, 2006, Plaintiff presented to Dr. Melissa Toner at Gardendale Physician

Associates, complaining of a stomach virus for three weeks, with associated symptoms of abdominal

pain, nausea, and diarrhea.  (Tr. 161).  It was noted that although Plaintiff's nausea and vomiting was

resolved and her diarrhea had improved with over-the-counter medication, she was instructed to

continue on clear liquids and over-the-counter medication for another day and then advance her diet

slowly when the acute illness was over.  (Tr. 161).  Plaintiff was referred by Dr. Toner for an

abdominal ultrasound and GI consultation.   (Tr. 165).

Plaintiff was administered an abdominal ultrasound at North Jefferson Imaging on January

13, 2006.  (Tr. 170).  Plaintiff's results, as assessed by Dr. C. Michael Mead, were listed as normal.

(Tr. 170).  On January 17, 2006, Plaintiff was evaluated by Dr. Gresham of Gastroenterology

Associates.  (Tr. 164).  Dr. Gresham's assessment of Plaintiff was red blood on the surface of the

stool, diarrhea, chronic reflux esophagitis, and irritable bowel syndrome.  (Tr. 164).  Dr. Gresham

recommended an EGD, complete colonoscopy, and that Plaintiff continue her current therapy pending results of testing and further plans to follow.  (Tr. 164).  On February 20, 2006, Plaintiff underwent a colonoscopy and upper endoscopy.  (Tr. 168-69).  After reviewing Plaintiff's results, Dr. Gresham assessed Plaintiff with probable irritable bowel syndrome and recommended that she begin a prescription of Pamine and follow-up in one month.  (Tr. 168).  Results of Plaintiff's endoscopy were non-erosive esophagitis.  (Tr. 169).  Again, Dr. Gresham  recommended an over-the-counter medication and that she follow-up in one month.  (Tr. 169).

Plaintiff presented to the Gardendale Physician Associates's clinic on March 14, 2006, complaining of headache and numbness and pain on the left side of her face.  (Tr. 154).  Plaintiff was seen by Dr. Nichols who assessed Plaintiff with vertigo, headache with nausea and vomiting, and numbness on the left side of her face with vertigo.  Plaintiff was scheduled for an MRI of her brain and sinuses the next day.  (Tr. 156).  Dr. Mead reviewed the results of Plaintiff's sinus MRI finding "mild chronic bilateral maxillary, bilateral anterior ethmoid, and sphenoid sinusitis."  (Tr. 158). Upon review of Plaintiff's brain MRI, Dr. Mead found a "left posterolateral pontine mass extending into the left middle cerebellar peduncle partially effacing fourth ventricle and aqueduct without hydrocephalus or herniation at this time."  (Tr. 157).  Dr. Mead noted, "[t]he mass most likely represents a glioma/astrocytoma and does show some mild contrast enhancement particular about a more centrally necrotic area."  (Tr. 157).  Plaintiff was then referred by Dr. Louis B. Nabors, III, an Associate Professor of Neurology at UAB Brain Tumor Treatment and Research Center, to Johns Hopkins Hospital for further testing.  (Tr. 198).  On April 19, 2006, Plaintiff was administered an MRI-guided stereotactic biopsy, results of which showed a brain stem tumor.  (Tr. 200).  Dr. Nabors opined that "[Plaintiff's] symptoms date back as far as 10 years ago.  Therefore, it is my opinion that

she has had this tumor for at least 5 to 10 years and it has now grown and become more malignant and causing worsening of symptoms and necessitating treatment with chemotherapy and radiation therapy." (Tr. 195, 258-64).

## II.    The Decisions of the ALJ and Appeals Council

To obtain child's insurance benefits, an applicant is required to show that she suffered from a disability before attaining the age of 22, and that her disability was ongoing through the date of her application.  42 U.S.C. § 402(d)(1)(B).  The applicant must be a child of the wage earner under whose insurance she is applying, § 402(d)(1), and must be dependent on the wage earner, 20 C.F.R. § 404.350.  Under § 423(d)(1)(A), a person is disabled if she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

Determination of disability under the Act requires a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).  First, the ALJ determines whether the individual is performing substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(b), 416.920(b) (2011). "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a) (2011).  "Gainful work activity" is work done for pay or profit.  20 C.F.R. §§ 404.1572(b), 416.972(b) (2011).  If the individual is not engaged in SGA, then the ALJ proceeds to the next step.  Second, the ALJ must determine whether the individual has a medically determinable impairment or a combination of impairments that significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An individual may not claim disability if they do not have such an

9

impairment.  Third, the ALJ must determine if the individual has an impairment that equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (2011) (the "Listings"). 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  If the individual's impairment meets the criteria in the Listings, then the individual is disabled.

If the individual does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the remaining steps of the analysis.  Before proceeding with step four, the ALJ must determine the individual's residual functional capacity ("RFC"), which refers to the individual's ability to work despite her impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e).  In the fourth step, the ALJ determines whether the individual has the RFC to perform past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the ALJ determines that the individual is capable of performing past relevant work, then the individual is not disabled.  If the ALJ concludes that the individual is unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  In the last step of the analysis, the ALJ must determine whether the individual is capable of performing any other work commensurate with her RFC, age, education, and work experience.  § 404.1520(g).  At this point, the burden shifts from the individual to the ALJ to prove the existence of a significant number of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.920(g), 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

In this case, the ALJ, as modified by the Appeals Council,[4] determined that Plaintiff:  (1) had not engaged in substantial gainful activity since the onset of her alleged disability; (2) did have

---

[4] For ease of reference, the court will refer to this ruling, made initially by the ALJ but modified by the Appeals Council, as the ALJ's determination.

medically determinable impairments – namely, headaches, abdominal symptoms, and nausea; but that (3) her medically determinable impairments do not equal the criteria of an impairment in the Listings.  (Tr. 23).  After consideration of the record and  Plaintiff's subjective complaints of pain, the ALJ determined that Plaintiff had the RFC to perform light work  requiring only occasional bending, occasional push/pulling with the upper extremities, and no exposure to unrestricted heights. (Tr. 21-22, 24).  Further, the ALJ deemed Plaintiff's allegations of more severe impairments than this were not credible.  (Tr. 24).  Despite Plaintiff's past work as a cosmetologist and phlebotomist, which she never performed at the level of SGA, the ALJ determined that this work does not constitute past relevant work.  (*Id*.)  Additionally, even though Plaintiff's nonexertional limitations did not allow her to perform the full range of light work under the framework as set out in Medical-Vocational Rule 202.20, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed prior to her twenty-second birthday.  (*Id*.) The ALJ concluded that Plaintiff was not under a disability as defined by the Act prior to her twenty-second birthday, and therefore, was not entitled to child's insurance benefits.  (*Id*.)

In its order granting review, the Appeals Council concluded that the "Administrative Law Judge's finding that [Plaintiff was] not disabled in November 2009 was not consistent with the determination by [the] State agency that [Plaintiff] became disabled in April 2006." (Tr. 237). Accordingly, the Appeals Council indicated that, while a decision finding that the record established an onset date of disability of April 19, 2006 appeared to be in order, Plaintiff nevertheless was not entitled to child's insurance benefits because Plaintiff had attained age 22 in November 2002.  (Tr. 237). See 20 C.F.R. § 404.350(a)(5).  The Appeals Council issued a decision on February 16, 2011, finding Plaintiff disabled beginning on April 19, 2006 (Tr. 6, Finding 3), but not disabled prior to

November 2002 when she turned twenty-two years old.  (Tr. 6, Finding 7).  The Appeals Council adopted the ALJ's statements regarding the pertinent provisions of the Social Security Act, regulations, rulings, issues in the case, and the evidentiary facts, as applicable.  (Tr. 5).

## III.     Plaintiff's Argument for Reversal

Plaintiff argues that the ALJ and Appeals Council should have found that she is entitled to child's insurance benefits, which is supported by the medical evidence of record. (Doc. # 9 at 11). Plaintiff contends that the ALJ and Appeals Council dismissed the finding of the State Agency Disability Determination Service ("DDS") – that she was disabled – without explanation.  (Doc. # 9 at 11).   Additionally, Plaintiff asserts that the ALJ disregarded the opinion of her treating neurologist that her brain tumor existed prior to her twenty-second birthday.  (Doc. # 9 at 11). Plaintiff is correct in her brief when she states, "[t]he only question the ALJ should...have considered on appeal was the question of whether [her] disabling condition did, in fact, exist prior to age 22." The medical record in this case provides substantial evidence that supports the ALJ's and the Appeals Council's decision that the answer to that question is "no."

## IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner;

instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.   Discussion

### A.   Substantial Evidence Supports the ALJ's Decision and the Correct Legal Standards Were Applied.

The ALJ was only required to address whether Plaintiff was disabled prior to her twenty-second birthday. The ALJ and the Appeals Council correctly concluded that Plaintiff was not disabled at any time prior to November 2002, when she attained the age of twenty-two. (Tr. 6). Furthermore, the ALJ and the Appeals Council applied the correct legal standards in assessing whether Plaintiff was disabled.

The ALJ is charged with making a disability determination in accordance with the five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. In order to obtain child's insurance benefits, Plaintiff is required to show that she suffered from a disability before attaining

13

the age of twenty-two, *i.e.*, in this case, on or before November 2002, and that her disability was ongoing through the date of her application.  42 U.S.C. § 423(d)(1)(A).

As required in the first step of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 2006.  At the second step, the ALJ determined that Plaintiff had medically determinable severe impairments in the form of abdominal pains, headaches, and nausea.  (Tr. 21).  Further, the ALJ determined Plaintiff's limitations mildly affected her ability to perform work.  Plaintiff's limitations, however, did not prevent her from completing high school, driving herself thirty miles to attend Jefferson State Community College, and working full-time as a cosmetologist and phlebotomist.  (Tr. 261-70).  While working as a phlebotomist, Plaintiff was even was able to work long hours.  (Tr. 261).

At the third step, the ALJ determined that prior to attaining the age of twenty-two, Plaintiff's impairments did not meet or equal an impairment in the Listings.  (Tr. 21).  Although Plaintiff asserts that she had a brain tumor prior to turning age twenty-two, the medical evidence during this time does not show that she was given a confirmed diagnosis of a brain tumor prior to turning twenty-two years old.  (Tr. 21).  Before proceeding to the fourth step, the ALJ determined Plaintiff's RFC to perform her past relevant work or any other work.  To make this determination, the ALJ took into account Plaintiff's allegations of pain and other subjective symptoms.  (Tr. 21).  The ALJ correctly applied the Eleventh Circuit standard to assess subjective complaints of pain and other subjective symptoms.  (Tr. 21).  First, the ALJ determined that Plaintiff had a medically determinable impairment based on the medical evidence.  (Tr. 22).  Second, the ALJ found there was medical evidence that confirmed the severity of the alleged pain arising from that condition, which the record reflects.  Finally, the ALJ assessed whether the condition was so severe that it would give rise to the

alleged pain.  The ALJ found that Plaintiff's pain complaints triggered only mild to moderate limitations.  (*Id.*)  This determination was based on the fact that Plaintiff successfully completed high school without failing a grade and subsequently worked as a phlebotomist after graduating from high school.  (*Id.*)  In sum, the ALJ correctly applied the five-step evaluation process in his determination that Plaintiff was not disabled.

### B.  The DDS' Determination of Disability is Not Relevant to Whether Plaintiff was Disabled Prior to Attaining the Age of Twenty-two.

Plaintiff argues that (1) the Appeals Council and the ALJ should have found that she was disabled because she was deemed disabled by the DDS under a medical listing, and (2) the ALJ failed to provide some rationale for dismissing this determination.  (Doc # 9 at 11).  The DDS determined that Plaintiff became disabled on April 19, 2006.  (Tr. 32).  Plaintiff turned twenty-two years old some three and a half years before that, on November 22, 2002.  (Tr. 32).  Accordingly, the onset of Plaintiff's disability, even as determined by the DDS, occurred after her twenty-second birthday.  It was unnecessary for the ALJ to address this finding because the ALJ was only required to determine whether Plaintiff suffered from a disability prior to her twenty-second birthday.  The agency's finding of disability on April 19, 2006 is well outside the applicable date that the ALJ had to consider.  Therefore, the ALJ correctly disregarded the DDS's finding – that Plaintiff was disabled *after* she turned twenty-two – when determining whether Plaintiff was disabled *prior* to turning twenty-two.

### C.  The ALJ Properly Considered Dr. Nabor's Opinion.

Plaintiff contends that the ALJ provided no rationale for rejecting the opinion of Dr. Nabors, Plaintiff's "treating neurologist," who opined that Plaintiff's malignant brain tumor existed long

15

before she turned twenty-two years old.  (Doc. # 9 at 11-12).  Plaintiff asserts that Dr. Nabors'

opinion, as a treating physician, is entitled to significant weight and that the ALJ was required to

explain why he disregarded the opinion.  (Doc. # 9 at 12-13 (citing *Boyd v. Heckler*, 704 F.2d 1207,

1211 (11th Cir. 1983)).  Plaintiff argues that if the ALJ had properly considered Dr. Nabors' opinion,

he would have determined that Plaintiff was disabled prior to age twenty-two.

In 2006, when Plaintiff was twenty-five, Dr. Nabors treated Plaintiff for her "brainstem

malignant tumor."  (Tr. 195).  Although he did not treat Plaintiff prior to 2006 or prior to her twenty-

second birthday, Dr. Nabors stated that "[h]er symptoms date back as far as 10 years ago."  Further,

he opined that "she had this tumor for at least 5 to 10 years and it has now grown and become more

malignant causing worsening of symptoms and necessitating treatment with chemotherapy and

radiation therapy."  (Tr. 195).  Dr. Nabors did not conclude that Plaintiff was disabled or that she had

a medically determinable impairment prior to age twenty-two.  (Tr. 192-95).

Plaintiff does not explain how the ALJ rejected Dr. Nabors' opinion.  In fact, the ALJ

considered Dr. Nabors' opinion, noting that "one of the claimant's doctors may have opined that the

claimant could have had a brain tumor around 2004 and perhaps earlier, but the medical evidence

of record does not show a diagnosis or any treatment for such."  (Tr. 21).  After considering Dr.

Nabors' opinion, the ALJ properly concluded that "the allegations of a brain tumor prior to the

claimant attaining the age of 22, without more, do not constitute a medically determinable

impairment."  (Tr. 21).  A medical opinion stating Plaintiff may have had the brain tumor prior to

turning twenty-two does not establish that she had a medially determinable impairment during that

time.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c) (providing that, to be disabled, an individual must

have an impairment or combination of impairments that significantly limits her physical or mental

16

ability to perform basis work activities).  As the record shows, Plaintiff was never diagnosed with

a brain tumor prior to her twenty-second birthday.  But in any event, there is a significant difference

between (1) a medical opinion that a claimant had a tumor nine years ago, and (2) evidence that such

a claimant suffered from a disability at that time.  In this case, the former is indicated by the record;

the latter is not.  Quite simply, Dr. Nabors' opinion is consistent with the ALJ's determination that

the medical evidence of record did not show Plaintiff having a medically determinable impairment.

There is simply nothing in the record to suggest that the ALJ disregarded Dr. Nabors' opinion.

## VI.    Conclusion

The court concludes that the ALJ's determination that Plaintiff was not disabled prior to

attaining the age of twenty-two is supported by substantial evidence and the proper legal standards

were applied in reaching this determination.  The Commissioner's final decision is therefore due to

be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____9th_____ day of November, 2011.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE